UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL,<br><br>   Plaintiff,<br><br>vs.<br><br>ROCKINGHAM PROPERTIES LLC and DANIEL LOVENHEIM,<br><br>   Defendants. | Civil Action No. 25-CV-14622<br><br>**COMPLAINT** |

Plaintiff AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL, ("**Plaintiff**"), by way of complaint against the Defendants ROCKINGHAM PROPERTIES LLC ("**Rockingham**") and DANIEL LOVENHEIM, individually ("**Lovenheim**," together with Rockingham, "**Defendants**") says:

**PARTIES**

1. Plaintiff is a Georgia state-chartered banking corporation, doing business as Balboa Capital, with its principal place of business in the County of Fulton, State of Georgia, qualified to do business and doing business in the State of California, County of Orange. Plaintiff has offices at 575 Anton Boulevard, Suite 1080, Costa Mesa, California 92626..

2. Upon information and belief, Rockingham is a North Carolina Limited Liability Company with its principal office at 609 Glenwood Ave., Raleigh, North Carolina 27603.

3. Upon information and belief, Lovenheim is the owner and manager of Rockingham.

4. Upon information and belief, Lovenheim is a resident of the state of North Carolina with an address of 609 Glenwood Ave., Raleigh, North Carolina 27603.

## JURISDICTION

5. Pursuant to paragraph 18(b) of the Equipment Finance Agreement, Defendants have consented to the personal jurisdiction of this Court.

6. Diversity jurisdiction exists under 28 U.S.C. § 1332(a) because this is a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is appropriate in the District of New Jersey pursuant to 28 U.S.C. § 1391.

## FIRST COUNT
*(Breach of Contract)*

8. On or about March 26, 2025, Rockingham entered into and executed an Equipment Finance Agreement and related documents (together, the "EFA") with FPG Leasing Group Inc. d/b/a Financial Partners Group ("FPG"). A true and accurate copy of the Equipment Finance Agreement is attached hereto, and incorporated herein by reference as if set out in full as **EXHIBIT A**.

9. Pursuant to the EFA, Rockingham financed various HVAC equipment more specifically itemized on Exhibit A thereto (collectively, the "Collateral") and granted FPG a first priority security interest therein. See "Exhibit 'A' Equipment Description Addendum" to EXHIBIT A.

10. In connection with the EFA, Lovenheim entered into and executed an absolute, unconditional, and continuing guaranty whereby he personally guaranteed the obligations of Rockingham. See Guaranty, EXHIBIT A at pg. 1.

11. Thereafter, FPG transferred all of its right, title and interest in and to the EFA, Guaranty, and the Collateral to Plaintiff and notified Rockingham of said assignment. A true and

accurate copy of the Notice of Assignment is attached hereto and incorporated herein by reference as if set out in full as **EXHIBIT B**.

12. Defendants defaulted under paragraph 14 of the EFA in that they failed to make the required monthly payments for June 30, 2025 and each month thereafter.

13. Plaintiff has demanded payment due under the EFA, but Defendants have refused and continue to refuse to make payment of the remaining indebtedness due and owing to Plaintiff.

14. Pursuant to paragraph 15 of the EFA, upon default Plaintiff may accelerate and require immediate payment of the accelerated balance due.

15. Pursuant to paragraph 15 of the EFA, upon default, Defendants are additionally liable to Plaintiff for, inter alia, contractual attorneys' fees and costs, recovery costs, collection costs, and other similar charges incurred and to be incurred in collection of the remaining indebtedness due and owing to Plaintiff and/or enforcement of all rights, interests and remedies available to Plaintiff.

16. Plaintiff declared Defendants in default and demanded the accrued and outstanding payments plus the entire accelerated balance, plus accrued and unpaid interest and late charges pursuant to the EFA, to be immediately due and payable, in the amount of Three Hundred Nineteen Thousand Four Hundred Thirty-Six Dollars and 96/100 ($319,436.96) as of August 6, 2025.

17. Pursuant to paragraph 15 of the EFA, upon default, Plaintiff is also entitled to immediate possession of the Collateral.

18. Plaintiff has demanded possession of the Collateral, and Defendants have failed and refused and continue to refuse to surrender and deliver same to Plaintiff.

19. Pursuant to the Guaranty, Lovenheim is jointly and severally liable for, and in default for failing and refusing to pay, the full amount due and owing to Plaintiff under the EFA.

**WHEREFORE**, Plaintiff demands Judgment to be entered in its favor and against Defendants Rockingham Properties, LLC and Daniel Lovenheim, jointly and severally, for:

a. Compensatory damages in the amount of Three Hundred Nineteen Thousand Four Hundred Thirty-Six Dollars and 96/100 ($319,436.96) as of August 6, 2025, together with all interest, expenses, reasonable attorneys' fees and costs, and any taxes, incurred by Plaintiff; and

b. Immediate possession of the Collateral, which is the subject of the EFA; and

c. Attorneys' fees and costs; and

d. Such other further and appropriate remedy and relief as this Court deems proper.

## SECOND COUNT
*(Conversion)*

20. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

21. Defendants' actions as set forth above constitute an intentional and knowing conversion of Plaintiff's assets and property.

22. Plaintiff has been severely injured as a direct and proximate result of Defendants' conversion of Plaintiff's assets and property.

**WHEREFORE**, Plaintiff demands Judgment to be entered in its favor and against Defendants Rockingham Properties, LLC and Daniel Lovenheim, jointly and severally, for:

A. Compensatory damages in the amount of Three Hundred Nineteen Thousand Four Hundred Thirty-Six Dollars and 96/100 ($319,436.96) as of August 6, 2025, together with all interest, expenses, reasonable attorneys' fees and costs,

and any taxes, incurred by Plaintiff; and

B. Immediate possession of the Collateral, which is the subject of the EFA; and

C. Punitive damages; and

D. Attorneys' fees and costs; and

E. Such other further and appropriate remedy and relief as this Court deems proper.

## THIRD COUNT
### (Estoppel)

23. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

24. In entering into the transactions at issue, FPG relied directly upon the express representations of Defendants in the EFA, Guaranty and related documents.

25. Defendants entered into the EFA, Guaranty and related documents with full knowledge of FPG's reliance upon Defendants' representations, and, indeed, Defendants made said representations to induce FPG and for its successor the Plaintiff to rely thereon.

26. Plaintiff has been injured as a direct and proximate result of Defendants' failure to honor the express representations in, and terms of, the EFA, Guaranty and related documents.

27. Based upon the foregoing, Defendants are estopped from disputing the express terms of the EFA, Guaranty and related documents.

**WHEREFORE**, Plaintiff demands Judgment to be entered in its favor and against Defendants Rockingham Properties, LLC and Daniel Lovenheim, jointly and severally, for:

A. Compensatory damages in the amount of Three Hundred Nineteen Thousand Four Hundred Thirty-Six Dollars and 96/100 ($319,436.96) as of August 6, 2025, together with all interest, expenses, reasonable attorneys' fees and costs,

and any taxes, incurred by Plaintiff; and

B. Immediate possession of the Collateral, which is the subject of the EFA; and

C. Attorneys' fees and costs; and

D. Such other further and appropriate remedy and relief as this Court deems proper.

## FOURTH COUNT
*(Unjust Enrichment)*

28. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

29. As a result of Defendants' conduct as set forth above, Defendants have been unjustly enriched.

30. Plaintiff is entitled to recovery under the doctrines of quasi-contract, quantum meruit and unjust enrichment.

**WHEREFORE**, Plaintiff demands Judgment to be entered in its favor and against Defendants Rockingham Properties, LLC and Daniel Lovenheim, jointly and severally, for:

A. Compensatory damages in the amount of Three Hundred Nineteen Thousand Four Hundred Thirty-Six Dollars and 96/100 ($319,436.96) as of August 6, 2025, together with all interest, expenses, reasonable attorneys' fees and costs, and any taxes, incurred by Plaintiff; and

B. Immediate possession of the Collateral, which is the subject of the EFA; and

C. Attorneys' fees and costs; and

D. Such other further and appropriate remedy and relief as this Court deems proper.

4934-4656-0093.v1

**DESIGNATION OF TRIAL COUNSEL**

Robert L. Hornby is hereby designated as trial counsel in this matter for the Plaintiff.

|  |  |
|---|---|
|  | **CHIESA SHAHINIAN & GIANTOMASI PC** |
|  | *Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital* |
|  |  |
|  | By   */s/Robert L. Hornby* |
|  |         ROBERT L. HORNBY |
| Dated:  August 14, 2025 |  |

**CERTIFICATION PURSUANT TO 28 U.S.C. § 1746**

Pursuant to Local Civil Rule 11.2 and 28 U.S.C. § 1746, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any court or in any pending arbitration or administrative proceeding.

|  |  |
|---|---|
|  | **CHIESA SHAHINIAN & GIANTOMASI PC** |
|  | *Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital* |
|  |  |
|  | By*/s/Robert L. Hornby* |
|  |         Robert L. Hornby |
| Dated:  August 14, 2025 | Robert L. Hornby, Esq. (022582000) |
|  | 105 Eisenhower Parkway |
|  | Roseland, NJ  07068 |
|  | 973.325.1500 |
|  | 973.325.1501 |
|  | Email:  rhornby@csglaw.com |

7

# **EXHIBIT A**

Docusign Envelope ID: 1E94C367-446F-44D9-AAF8-7F32F2E298C
Case 3:25-cv-14622-MAS-RLS   Document 1   Filed 08/14/25   Page 9 of 16 PageID: 9
THIS IS A COPY
the Authoritative copy of this record is held at NA4.docusign.net



**EQUIPMENT FINANCE AGREEMENT**
**AGREEMENT NUMBER: B517416-001**

| CUSTOMER INFORMATION: | | |
|---|---|---|
| **Customer Name:** Rockingham Properties LLC<br><br>**Phone No.:** 910-387-7440<br><br><br>**Email Address:** info@rockingham-speedway.com | **Customer Address:** 2152 North US Highway 1<br>Rockingham, North Carolina, 28379<br><br>**Federal Tax ID No.:** ▮▮▮▮<br><br>**Customer Billing Address (if different from above):** | **Lender Name:** FP Leasing Group Inc. d/b/a Financial Partners Group<br><br>**Lender Address:**<br>65 Mechanic Street<br>Suite 207<br>Red Bank, NJ 07701<br><br>**Lender Email Address:** |

| EQUIPMENT DESCRIPTION & SUPPLIER INFORMATION | |
|---|---|
| **Description of Equipment:** see invoice attached hereto as exhibit a and incorporated herein by this reference<br><br><br>**Location(s) of Collateral (if different from Customer Address):** | **Supplier Name:** ULTIMATE COMFORT INC<br><br>**Supplier Address & Phone Number:**<br><br>1508 S SAUNDERS ST<br>Raleigh, North Carolina, 27603 |

**Financing of Equipment.** FP Leasing Group Inc. d/b/a Financial Partners Group (together with its successors and assigns, "Lender"), hereby agrees to provide financing for acquisition by the above-named Customer ("Customer") of the equipment described herein (the "Equipment") which **shall only be used for commercial purposes**. Customer hereby agrees to repay Lender the financing provided under the terms and conditions set forth in this Equipment Finance Agreement (this "Agreement"). The term "Customer" shall include all Customers who have signed this Agreement.

**Supplier Not an Agent; Customer Selected Equipment.** Customer agrees that neither any Supplier(s) ("Supplier") nor any salesperson, employee or agent of supplier(s) are the agent of Lender, and do not have any authority to alter or amend this Agreement in any manner. Customer also hereby acknowledges that Lender did not provide advice, assistance, or input of any kind in Customer's selection of the Equipment, the Supplier, or any related decisions. Customer acknowledges that Customer chose the Equipment and Supplier based solely on its own evaluation of the Supplier and the Equipment.

| PAYMENTS & TERM | AMOUNT FINANCED $240,519.00 |
|---|---|
| **Term (in Months):**<br>62 Months<br><br>**Periodic Payment:**<br>2 @ $5,473.56<br>60 @ $5,473.56 | **Initial Payment:**<br>Security Deposit: $ _____<br>First Payment: $10,947.12<br>Document & Other Fees: $595.00<br>Other: $ _____<br>Total Initial Payment: $11,542.12 |

BY SIGNING THIS AGREEMENT CUSTOMER HEREBY AGREES THAT CUSTOMER HAS READ, REVIEWED, AND UNDERSTOOD PAGES 1 THROUGH 5 OF THE AGREEMENT, PLUS ALL EXHIBITS AND SCHEDULES THERETO.

| CUSTOMER: Rockingham Properties LLC | LENDER: FP Leasing Group Inc. d/b/a Financial Partners Group |
|---|---|
| Signature: *Daniel Lovenheim*<br>Name: Daniel Lovenheim<br>Title: Manager<br>Date: 3/26/2025 | Signature: *Stephanie Gamm*<br>Name: Stephanie Gamm<br>Title: Funding Manager<br>Date: 3/26/2025 |

**GUARANTY:** The undersigned ("Guarantor" or "you") hereby absolutely, irrevocably and unconditionally guaranty to FP Leasing Group Inc. d/b/a Financial Partners Group, its successors and assigns ("Lender," "we," "us" or "our"), the payment and performance when due of all existing and future obligations of Customer under the Equipment Finance Agreement above and on the pages to follow (the "Agreement"), and all related documents executed by Customer for the benefit of Lender. You acknowledge that you have read and understood the Agreement and this Guaranty. We may proceed against you before proceeding against the Customer, proceeding against Collateral or enforcing any other remedy. This Guaranty will remain in effect, even if the terms of the Agreement are amended with Customer or Lender fails to file a financing statement (or any continuation thereof) and/or obtain or perfect its security interest in any other manner. It is beneficial to you for Customer to enter into the Agreement. You hereby waive all notices to which you may have a right under this Guaranty or the Agreement. You agree to pay us all our expenses, including our reasonable attorneys' fees, in enforcing and/or preserving our rights under this Guaranty and the Agreement. You may not assign this Guaranty. The provisions of the Section of the Agreement entitled "Miscellaneous" are incorporated herein by reference, except that all references to the "Agreement" and the "Customer" shall refer to this Guaranty and the Guarantor, respectively. All capitalized terms used in this Guaranty and not otherwise defined will have the meanings given to them in the Agreement. This will confirm that at or before the time Customer sought financing, that you authorized us and any broker involved in this transaction to obtain a personal credit report and other credit information on you. You agree that we may obtain any information from credit reporting agencies we deem necessary, in our sole discretion. The term "Guarantor" shall include all Guarantors who have signed this Agreement, each and all of whom shall be jointly and severally liable. You shall provide Lender with any financial information requested within 10 days of written request.

| AGREED: Daniel Lovenheim |
|---|
| Signature: *Daniel Lovenheim*<br>Title: Individual<br>Name: Daniel Lovenheim<br>Date: 3/26/2025 |

1

3603668v1

Docusign Envelope ID: 1F91C367-4465-44D9-AAF8-77F32F25398C
Case 3:25-cv-14622-MAS-RLS    Document 1    Filed 08/14/25    Page 10 of 16 PageID: 10
THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

# EQUIPMENT FINANCE AGREEMENT

1. **Term; Payment.** Customer shall pay Lender during the term of this Agreement set forth herein (the "Term") the payments as set forth herein ("Periodic Payments") in order to repay Lender the Amount Financed set forth on the first page of this Agreement. Periodic Payments will begin on a date selected by the Lender and provided to Customer (the "Initial Payment Date") following the Commencement Date (defined below) and shall continue thereafter to be paid on the same date of each subsequent month after the Initial Payment Date for the full Term. Customer will make all payments required under this Agreement to us at such address as we may specify in writing or via ACH debit. The date on which Lender makes the first advance to one or more of the suppliers identified in the Agreement ("Supplier(s)") and/or to reimburse Customer an amount for the financing of the Equipment shall be referred to as the "Commencement Date." Customer shall pay Lender an interim payment (the "Interim Payment") in the amount equal to a Periodic Payment divided by 30 and then multiplied by the number of days from and including the Commencement Date to, but excluding, the Initial Payment Date. Should Customer fail to pay any part of a Periodic Payment or any other sum required to be paid by Customer to Lender hereunder within five (5) days of the date such payment comes due, Customer shall pay Lender a late charge on such delinquent payment of fifteen percent (15%) of the payment (the "Late Fee"). If a payment by Customer is returned unpaid for any reason, Lender may charge to Customer an additional payment processing fee. If the final cost of the Equipment is greater than the Amount Financed by an amount of ten percent (10%) or less, then Customer agrees that Lender may unilaterally increase the Periodic Payment to reflect the change in a pro-rata amount and, in such event, Lender will provide written notice to Customer. Any monies received by Lender shall be applied by Lender, in its sole discretion, to the sums owed by Customer. Customer agrees that Customer's obligation to pay all Periodic Payments and perform all other obligations under this Agreement shall be absolute, irrevocable, unconditional, and independent and shall be paid and performed without abatement, deduction, or offset of any kind or nature whatsoever. Customer may not cancel or otherwise terminate this Agreement for any reason whatsoever.

2. **Acceptance.** Customer shall inspect the Equipment to confirm the Equipment is in acceptable condition. Provided that Customer has not otherwise accepted the Equipment in writing, it shall be conclusively presumed that Customer unconditionally accepts the Equipment on its delivery date unless Customer sent to Lender written notice of non-acceptance within five (5) days of the date the Equipment was delivered to Customer, which notice must state that Customer does not accept the Equipment and a specific reason for such non-acceptance, and be sent to Lender at the address provided herein via overnight delivery through a nationally recognized courier, such as FedEx or UPS. Once the Equipment is accepted, it is unconditionally accepted by Customer for all purposes of this Agreement and all of Customer's obligations hereunder shall commence.

3. **Security Deposit; Advanced Periodic Payments.** If Lender requests and receives from Customer a security deposit, Lender will remit to Customer any remaining unapplied portion, without interest, upon Customer's full and final performance of its Obligations under this Agreement or any Guaranty. Following the occurrence of an Event of Default, Lender may apply such security deposit against any outstanding sums due hereunder at Lender's sole discretion, after which Customer agrees to remit to Lender an amount sufficient to replenish it to its original amount. No security deposit and/or advanced Periodic Payment shall accrue interest and may be commingled with Lender's other monies.

4. **Grant of Security Interest**. To secure all obligations of Customer hereunder, Customer hereby grants to Lender a first priority, purchase money security interest in all of Customer's right, title and interest in and to the Equipment, including all additions, accessions, modifications, software, substitutions and replacements thereof or thereto, all proceeds (cash and non-cash), including the proceeds of insurance thereof, and all records pertaining thereto (collectively, the "Collateral"). Customer further authorizes Lender to add to and/or modify this Agreement and/or amend and/or file any financing statement to provide or modify the description of the Equipment, other Collateral, including, but not limited to the serial number of each item of Equipment and/or other Collateral so delivered. Customer shall not otherwise create or permit to exist any lien or encumbrance on the Collateral.

5. **Titled Equipment**. Any item of Collateral which is subject to title registration laws must be titled by Customer, unless Lender advises otherwise in writing. Customer agrees to: (1) file all such documents of title with the appropriate title registration agency within fifteen (15) days of Lender's request, (ii) list Lender as the first and only lien holder, unless Lender specifies otherwise, and (iii) provide all filed documents of title to Lender within five (5) business days of its receipt of any such documents. Customer shall provide Lender written notice of any necessary or advisable re-titling and/or re-registration Collateral in a different or additional jurisdiction, within five (5) days of any change in titling or registration.

6. **Location of Equipment.** Customer shall not move the Equipment from the location(s) set forth herein without the prior written consent of Lender. Lender, or any employee or agent of Lender, shall have the right, at any reasonable time or times and without notice to Customer, to enter upon the premises where the Equipment is located for the purpose of confirming the existence, condition and proper maintenance of the Equipment. Lender shall have the right to affix labels to the Equipment in a prominent place to identify Lender's security interest therein.

7. **Disclaimer of Warranty**. Customer hereby agrees that: (i) Customer selected the Equipment and Lender played no role in its selection. (ii) Customer acknowledges and agrees that it has selected any software (collectively, the "Software") included on or within the Equipment and/or other Collateral. (iii) Customer accepts the Equipment **AS IS**, **WHERE IS, AND LENDER HAS NOT MADE AND DOES NOT MAKE ANY EXPRESS OR IMPLIED, WARRANTIES OF ANY KIND, INCLUDING BUT NOT LIMITED TO THE MERCHANTABILITY, TITLE, USE, SUITABILITY AND/OR OPERATION OF THE EQUIPMENT AND/OR ITS FITNESS FOR A PARTICULAR PURPOSE**; (iv) Customer shall look only to the Supplier or manufacturer and not Lender, for any claim concerning the Equipment such as those based on its delivery, condition, use and/or performance (a "Supplier Claim"); (v) a Supplier Claim shall not relieve Customer and/or any Guarantor of any of their respective obligations to Lender; and (vi) **CUSTOMER AND GUARANTOR HEREBY WAIVE AGAINST LENDER, AND LENDER SHALL NOT BE LIABLE FOR, ANY CLAIM FOR LOSS, INJURY OR DAMAGE OF ANY KIND OR NATURE CAUSED BY THE COLLATERAL, INCLUDING BUT NOT LIMITED TO ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE AND/OR EXEMPLARY DAMAGES**.

8. **Use, Maintenance; Repair and Data.** Customer shall use the Equipment in the manner for which it was intended, solely for Customer's business purposes, in accordance with all applicable manuals and instructions and in compliance with all applicable laws and regulations, and in conformity with the terms and conditions of any insurance policy obtained thereon. Customer, at its own cost and expense, shall keep the Equipment in good condition and working order, ordinary wear and tear excepted, and shall furnish all parts, maintenance and servicing as required by any manufacturer and/or Supplier's recommendations, requirements and/or guidelines. All replacement parts and repairs made to or placed upon the Equipment shall become part of the Collateral, subject to Lender's security interest in the Collateral. For any titled vehicles included in the Collateral, Lender may impose mileage limitations, in its sole discretion. Customer assumes all liability related to any unauthorized access or use of the Software and any data or information collected, stored, used or accessed by the Equipment and/or Collateral and/or Software (collectively, the "Data"), and agrees that Lender does not own or license any Software or Data. Customer further agrees that Lender has no duty to configure, maintain and/or otherwise safeguard the Software and/or Data. Before any

Docusign Envelope ID: 1F91C367-4465-44D9-AAF8-77F32F2E398C
Case 3:25-cv-14622-MAS-RLS   Document 1   Filed 08/14/25   Page 11 of 16 PageID: 11
THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

Equipment and/or Collateral is shipped to or retrieved by Lender or removed by a Supplier (or any other person), Customer is solely responsible, at its sole cost and expense, for permanently destroying, deleting and removing all Data that is stored, recorded or in any way contained within such Collateral, to the extent necessary so that further recovery of any such Data is not possible. Lender has absolutely no liability for any Data that Customer failed to so destroy, delete and remove. After the Data removal, all Software, hard drives and other Data retention components must function as originally installed. Customer may, with Lender's prior written consent, make such modifications to the Equipment. In the event that the Equipment and/or other Collateral is repossessed by Lender, as to such modifications which have been made, they shall remain as Collateral, unless Lender requires Customer by written request to remove and restore the Equipment to its original condition, reasonable wear and tear excepted.

9.  **Taxes and Expenses.** Customer shall keep the Collateral free and clear of all levies, liens and encumbrances and shall pay all license fees, registration fees, assessments, charges and taxes (federal, municipal, state and local governing authorities, including personal property taxes) which may now or hereafter be imposed upon the ownership, leasing, sale, possession or use of the Collateral. If Customer fails to pay any of said fees, assessments, charges or taxes, Lender shall have the right, but shall not be obligated, to pay the same. In that event, the amount of such taxes paid by Lender together with a reasonable administrative fee to compensate the Lender for administrative overhead expenses shall be payable to Lender as additional payments, and failure to pay the same shall constitute an Event of Default hereunder.

10. **Insurance**. So long as Customer has any obligations to Lender hereunder, Customer shall at its own expense insure the Collateral at all times against theft and all risks of loss or damage from every cause (including, without limitation, any vehicle insurance) whatsoever for not less than the aggregate replacement cost (including but not limited to shipping, handling and refurbishing) of the Equipment and shall carry public liability insurance, both personal injury and property damage, covering the Equipment and its use, in no less than the amounts of coverage, with policy provisions and carriers in form and in substance satisfactory to Lender in its sole discretion. Such insurance for theft, loss or damage shall name Lender as "Lender-Loss Payee,", such liability insurance shall name Customer as "Named Insured" and Lender as "Additional Insured" and all insurance policies shall provide Lender with no fewer than thirty (30) days' prior written notice of cancellation or termination of such policy(ies). Customer shall pay the premiums therefor, be responsible for all deductible portions thereof, and shall deliver to Lender upon request evidence satisfactory to Lender of such insurance coverage. Lender shall be under no duty to ascertain the existence of or to examine such insurance policies or to advise Customer in the event such insurance coverage shall not comply with the requirements hereof. If Customer fails to obtain and maintain in effect the requisite insurance policies, Lender, with no prejudice or waiver of any other right hereunder or provided by law, may at its option obtain insurance to be issued covering Lender's interest in the Equipment for the term of this Agreement, including all extensions and/or renewals. Lender may add the costs of acquiring and maintaining such insurance and related fees for Lender's services in placing and maintaining such insurance (collectively, "Insurance Charges") on which Lender may earn a profit, to the other amounts due Lender by Customer under the terms hereof. Such insurance coverage may duplicate the coverage under Customer's existing policies. The Insurance Charges may, at Lender's sole discretion, be paid in equal installments added to remaining Periodic Payments. Nothing in this Agreement will create an insurance relationship between Lender and any other person. Customer acknowledges that Lender is not required to secure or maintain any insurance, and Lender will not be liable to Customer for the termination of any insurance coverage that Lender arranges. The proceeds of such insurance payable as a result of loss or damage to the Equipment shall be applied to the repair or replacement of the Equipment and/or to existing or future sums (accelerated or otherwise) due under the Agreement at the Lender's sole discretion. Customer irrevocably appoints Lender as Customer's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents related to the insurance and/or insurance claim, checks or drafts in payment for loss or damage under any said insurance policies.

11. **Loss or Damage.** Customer bears the entire risk of loss or destruction of or damage to the Equipment from any cause whatsoever, whether or not insured. No such loss or damage shall relieve Customer from any obligation under this Agreement. In the event of damage to, loss or destruction of the Equipment, Customer shall immediately notify Lender in writing of such fact and shall, at the sole option of Lender, (a) place the Equipment in good condition and working order; (b) replace the Equipment with like equipment in good condition and working order and agrees and acknowledges that such replacement Equipment shall be subject to Lender's security interest granted hereunder, and be deemed "Equipment" for purposes hereof; or (c) pay to Lender the total of all sums due, including all (i) past due Periodic Payments plus (ii) accelerating all future unpaid Periodic Payments hereunder for the entire Term of the Agreement.

12. **Indemnification.** Lender is not responsible for any injuries or losses to Customer or any other related person or property caused by the installation, operation, maintenance, ownership, possession or use of the Equipment. Customer hereby agrees to reimburse Lender for, hold Lender harmless from, and defend Lender against any claims made against Lender, and for losses or injuries, damages, reasonable attorneys' fees and reasonable costs suffered by Lender, including, without limitation, those arising out of the negligence, tort, or strict liability claims. This indemnity shall continue even after the Term has expired.

13. **Other Agreements of Customer.** (a) Customer hereby warrants and represents that the Equipment shall be used for business purposes only and not for any personal, consumer or household purpose and Customer acknowledges that Lender has relied upon this representation in entering into with this Agreement (b) Customer acknowledges and warrants that the application, statements, financial reports and other information (the "Customer Information") submitted by it to Lender are material inducements to the execution by Lender of this Agreement, and all Customer Information previously or hereafter furnished by Customer to Lender is true and correct in all material respects as of the date submitted and that no such Customer Information omits any material fact necessary to make it not misleading; (c) Customer represents and warrants to Lender that: it is duly organized and validly existing and in good standing under the laws of the jurisdiction of the incorporation or formation; it is duly qualified to do business in each jurisdiction where any Equipment is, or is to be located and/or used; it has full power and authority to own the Equipment and to enter into and perform its obligations under this Agreement; this Agreement has been duly authorized and does not violate any law or rule or regulation applicable to Customer or the Equipment and does not constitute a default under any indenture, mortgage, contract or other instrument, agreement or document to which Customer is a party; that no provision of this Agreement is inconsistent with Customer's organizational documents; this Agreement is valid and binding on Customer and is enforceable against Customer in accordance with its terms; and the execution and delivery of this Agreement does not require any permit or consent of any state, federal or other governmental authority or agency; (d) Customer shall provide written notice to Lender (1) upon Customer becoming aware of any alleged violation of law relating to the Equipment and/or or this Agreement, and (2) thirty (30) days prior to any change in Customer's legal name, address, or jurisdiction or form of organization; (e) Customer has been advised by Lender that the USA Patriot Act and other applicable laws establish minimum standards of account information to be collected and maintained by Lender; and (f) Customer is and will remain in full compliance with all applicable laws including, without limitation, (1) ensuring that no person who owns a controlling interest in or otherwise controls Customer is or shall be (A) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (2) compliance with all applicable Bank Secrecy Act

3

Docusign Envelope ID: 1F91C367-4465-44D9-AAF8-77F32F2E398C
Case 3:25-cv-14622-MAS-RLS    Document 1    Filed 08/14/25    Page 12 of 16 PageID: 12
THIS IS A COPY
The Authoritative Copy of this record is held at na4.docusign.net

("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations.

**14. Events of Default.** An event of default shall be deemed to have occurred under this Agreement upon the occurrence of any of the following (each, an "Event of Default"): (i) Customer fails to pay any (x) Periodic Payments within five (5) days after the same is due and payable or (y) other amount herein provided within ten (10) days after the same is due and payable; (ii) any statement, representation or warranty by Customer and/or Guarantor set forth in this Agreement or made to Lender in any financial statements, applications, reports or other Customer Information submitted to Lender by or on behalf of Customer is untrue or misleading; (iii) Customer fails to timely perform any term, condition or provision of this Agreement as required hereunder (including, but not limited to, the giving of notice as herein provided); (iv) Customer defaults under any other agreement with Lender (or any affiliate of Lender) including without limitation payment when due of any indebtedness of Customer to Lender (or any affiliate of Lender) arising independently of this Agreement; (v) Customer or any guarantor of the obligations under this Agreement (each, a "Guarantor" or, collectively, "Guarantors") shall (A) be or become insolvent; (B) voluntarily file, or have filed against it involuntarily, a petition under the United States Bankruptcy Code or any other state or federal insolvency act providing similar relief; (C) if a corporation, partnership, or organization, cease to exist, if a partnership, suffer the death of a partner or, if an individual, die; or (D) ceases doing business as a going concern; (vi) if Customer is a corporation, more than fifty percent (50%) of the shares of voting stock of Customer shall become owned by a shareholder or shareholders who were not owners of voting stock of Customer on the date of this Agreement or, if Customer is a partnership more than fifty percent (50%) of the partnership interests in Customer shall become owned by a partner or partners who were not partners of Customer on the date of this Agreement or if Customer is a limited liability company more than fifty percent (50%) of the membership interests in Customer shall become owned by a member or members who were not members of Customer on the date of this Agreement; (vii) Customer consolidates with, merges into, or sells all or substantially all of its assets to, any individual, corporation, or other entity; (viii) there occurs a material adverse change in Customer's financial condition or business, or in the financial condition or business of any Guarantor, each as determined by Lender in its sole discretion; (ix) Customer makes an assignment for the benefit of creditors or admits its inability to pay debts as they become due; (x) Customer defaults or is in default under any real property lease or other financial obligation entered into with Lender or a third party; or (xi) any of the above Events of Default occur with respect to any Guarantor.

**15. Remedies.** Upon the occurrence of an Event of Default hereunder, Lender shall, in addition to any other right or remedy existing at law or in equity, have the following rights and remedies under this Agreement and any Guaranty, which shall be cumulative and not to the exclusion of any other remedies at law or in equity: (A) proceed at law or in equity to enforce specifically Customer's performance or to recover damages; (B) terminate this Agreement and retain all prior payments; (C) declare to be immediately due and payable, without additional notice of presentment or demand, an amount equal to the sum of (i) all unpaid Periodic Payments and other amounts required hereunder then accrued, (ii) all future accelerated Periodic Payments required hereunder (all of which shall be accelerated at Lender's discretion without notice to Customer), plus (iii) all other amounts due under this Agreement; (D) to the extent permitted by applicable law, enter the premises where any Equipment and/or other Collateral is located to immediately repossess, disable or take and/or other Collateral, and/or use such premises for storage of the Equipment and/or Collateral at the sole expense of Customer, and/or demand return of the Collateral by Customer, which return Customer shall immediately effect at its own cost and expense as directed by Lender, with or without demand, notice, court order or other process of law and without liability to Lender; Customer irrevocably waives to the fullest extent permitted by law any bond, surety or similar undertaking required of Lender in any cost-proceeding and/or otherwise, and agrees that such taking of possession will not constitute a termination of this Agreement unless Customer is so notified by Lender in writing; (E) sell, lease, rent or otherwise dispose of any or all of the Equipment and/or other Collateral in such terms as determined in Lender's sole discretion, and in connection therewith, the proceeds of such sale or lease shall be applied to the outstanding balance (including default fees and payments) due to Lender hereunder plus costs and expenses, (including reasonable attorneys' fees) of taking possession of or disabling the Equipment and/or other Collateral; (F) apply all or part of any security deposit provided by Customer, any Guarantor or any of their respective affiliates or parent entities and apply those sums and/or proceeds to the sums due Lender from Customer and/or Guarantor without adversely affecting any other rights of Lender; and/or (G) exercise any other right or remedy which may be available to Lender at law or in equity. Customer shall reimburse Lender for all attorneys' fees and court costs incurred by Lender in its enforcement, exercise or preservation of Lender's rights or remedies, in bankruptcy or otherwise, whether or not an Event of Default exists, under this Agreement or any Guaranty, including all expenses related to the preservation, return, repossession, repair, recovery, advertising, sale, storage, re-lease, remarketing or other disposition of the Collateral. From and after the date on which an Event of Default occurs, Customer shall pay interest to Lender with respect to all amounts due hereunder from the date due until such amounts are received by Lender in good funds at a per annum interest rate that is at the highest rate permitted by law.

**16. Assignment.** Customer shall not sell, lease, lend, deliver, assign, or pledge this Agreement, the Collateral or any interest in either or permit any lien, charge or encumbrance thereon, without the prior written consent of Lender. Customer will not abandon or relinquish possession of the Collateral to any party other than Lender. This Agreement and all of Lender's rights, interest and benefits, whether in whole or in part, may be sold, transferred, pledged, assigned or otherwise conveyed by Lender to any affiliated or unaffiliated person or entity (an "Assignee"), under this Agreement, in the Equipment, and/or any Guaranty, without notice to or the consent of Customer. In the event of any such assignment by Lender (an "Assignment"), Customer acknowledges that (i) such Assignee shall have the rights, interests and benefits that Lender conveys, but none of Lender's obligations; (ii) such Assignee's rights shall not be subject to any claims, defenses or set-offs that Customer or any Guarantor may have against Lender, whether arising under this Agreement, transaction or otherwise; (iii) Customer shall perform all of the obligations for the Assignee as required under such Assignment; and (iv) if so directed by Lender, Customer shall (and cause all Guarantors to) acknowledge such Assignment. If Lender provides to Customer written notice of any such Assignment, Customer agrees to promptly acknowledge receipt thereof in writing and, if so directed therein, to pay directly to such Assignee all sums payable hereunder.

**17. Lender's Option to Pay.** In the event that Customer fails to pay any amounts due under this Agreement or to otherwise perform any of its obligations under this Agreement, including but not limited to preserving the Equipment or to discharge or pay any taxes, liens or encumbrances thereon, Lender may, but without any obligation to do so, pay such amounts or perform such obligations. Lender's effecting performance of any obligations hereunder shall not be a waiver of any Event of Default hereunder. Except as otherwise set forth herein, Customer shall reimburse Lender immediately upon demand the amount of such payment or cost of such performance, together with interest thereon at the highest rate permitted by law if lower and Customer's failure to do so shall be the same as failure to pay any payment hereunder.

**18. Miscellaneous.**

a. <u>Governing Law</u>. This Agreement shall be binding and effective when accepted by an officer of Lender at its home office in New Jersey, shall be deemed to have been made in New Jersey and shall be governed by and construed in accordance with the laws of the State of New Jersey, without reference to applicable rules regarding conflicts of laws.

b. <u>Jurisdiction; Venue; Jury Waiver</u>. For purposes of adjudicating the rights and liabilities of the parties pursuant to this Agreement, Customer knowingly and voluntarily consents and submits to the jurisdiction of the Federal Courts and State Courts located (the "Selected Court(s)"): (i) if the Agreement is not assigned, in the State of New Jersey, or (ii) if this Agreement is assigned, in the state in which the assignee maintains its principal place of business. Customer agrees that Lender shall have the

Docusign Envelope ID: 1F91C367-4465-44D9-AAF8-77F32F2F398C
Case 3:25-cv-14622-MAS-RLS    Document 1    Filed 08/14/25    Page 13 of 16 PageID: 13
THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

option to choose the venue and forum of any litigation, action or proceeding arising directly or indirectly from this Agreement, whether it be one of the Selected Courts or in any court where Customer is subject to jurisdiction and venue. However, if Customer commences any litigation, action or proceeding against Lender, Customer may only do so in an appropriately Selected Court. CUSTOMER KNOWINGLY AND VOLUNTARILY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY MATTER OR PROCEEDING RELATED TO THIS AGREEMENT OR ANY SCHEDULE TO THIS AGREEMENT.

c. <u>Entire Agreement</u>. This Agreement (and all riders, amendments, and addendums thereto) shall contain the entire agreement and understanding between Customer and Lender. No amendment, modification or waiver of the provisions of this Agreement shall be binding on the parties hereto unless (i) set forth in writing and signed by each of the parties and/or (ii) permitted by this Agreement.

d. <u>Non-Waiver; Severability</u>. No waiver by Lender of any breach or default shall constitute a waiver by Lender of any additional or subsequent breach or default nor shall it be a waiver of any of Lender's rights. Any waiver by Lender shall be in writing and signed by Lender or its authorized agent. Any provision of this Agreement which for any reason may be unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such enforceability without invalidating the remaining provisions of this Agreement. Any such unenforceability in any jurisdiction shall not render unenforceable such provision in any other jurisdiction.

e. <u>Notices</u>. Unless otherwise expressly indicated herein, written notices to be given hereunder shall be deemed to have been given when delivered personally or deposited in the United States mail certified, return receipt requested, postage prepaid, addressed to such party at its address set forth herein. Email notices from Lender to Customer as set forth in the Section titled "Attorney-in-Fact" shall be deemed to have been given at the time of receipt.

f. <u>Information</u>. Until all of Customer's obligations to Lender have been fulfilled, Customer authorizes Lender and Lender's Assignees to obtain credit bureau reports and make such other credit inquiries as Lender (or its assigns) determines in its sole discretion. Customer agrees to deliver to Lender (a) within ninety (90) days after the end of each fiscal year of Customer, a balance sheet of Customer as of the end of such fiscal year and the related statement of income for such fiscal year setting forth the figures for the previous year, all reported in accordance with generally accepted accounting principles of Customer's independent public accountants, and (b) from time to time, such additional information, including such information regarding the financial position or business of Customer or the Collateral (including, without limitation, the location of the Collateral), as Lender (or its assigns) may reasonably request.

g. <u>Attorney-in-Fact</u>. Customer: (a) irrevocably appoints Lender, its officers and employees, as its attorney-in-fact, with full power in Lender's or Customer's name to execute and file all such financing statements and other documents (including those relating titled Equipment) as Lender deems necessary or advisable hereunder to perfect Lender's interest in the Collateral, process insurance claims, and/or otherwise consistent with this Agreement; and (b) shall execute or obtain and deliver to Lender, upon Lender's request, such instruments, financing statements and assurances (including those relating to liens on vehicle titles), as Lender deems necessary for the protection or perfection of this Agreement and Lender's rights hereunder and will pay all costs incident thereto. Customer further agrees that Lender is authorized, unilaterally and without additional notice to, or the consent of, Customer, to modify the Agreement, all financing statements, title documents and other documents related thereto to: (i) supply missing information and correct typographic or substantive errors related to the Customer and Supplier contact information, all payment and other dates as well as the description, serial numbers and location of the Equipment; and (ii) which are consistent with the terms of the Agreement including, without limitation, increasing the amount of the Periodic Payment as authorized herein.

h. <u>Pre-payment</u>. If Customer wishes to prepay its obligation hereunder, Customer may contact Lender for a pre-payment amount. Lender may decline to offer a pre-payment option in its sole discretion.

i. <u>Email and Text Messages</u>. Customer agrees that by providing Lender, now or in the future, with an email address or cell phone number, Customer expressly consents to receiving email or text communications from Lender, its affiliates and/or assigns at that email address or cell phone number, regardless of their purpose, including, but not limited to, notices under this Agreement, marketing or collection purposes. Customer may unsubscribe from email and text marketing messages at any time.

j. <u>Counterparts</u>. This Agreement, all guaranties and any amendments, waivers, consents or supplements thereto and documents related therewith may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

k. <u>Execution</u>. This Agreement, all guaranties and any amendments, waivers, consents or supplements thereto and all documents related therewith may be signed via digitally generated signatures pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act, the Uniform Commercial Code ("UCC") and other applicable law. All signatures so generated, as well as those transmitted by facsimile, digital photograph, email and/or other electronic means, shall be deemed as effective as an original ink signature and legally admissible as conclusive evidence of Customer's agreements. If the Agreement is executed manually by Lender, it shall be construed as the original for chattel paper purposes.

l. <u>Headings</u>. The section headings in this Agreement are intended for convenience and reference only, and are not intended to define, limit, or describe the scope or intent of any provisions of this Agreement.

m. <u>Survival</u>. All Customer's obligations and Lender's rights hereunder shall survive the expiration or earlier termination of this Agreement and/or any Guaranty.

n. <u>Financing Statement</u>. Lender and Customer agree that a reproduction of this Agreement may be filed as a financing statement and shall be sufficient as a financing statement under the UCC.

o. <u>Further Assurances</u>. Customer will execute and deliver such further documents and perform such further acts as reasonably requested by Lender in order to give effect to the terms and conditions contemplated herein.

p. <u>Joint and Several</u>. If more than one Customer signed this Agreement, each of them are jointly and severally obligated and liable hereunder.

Docusign Envelope ID: 1F91C367-4465-44D9-AAF8-77F32F2E398C
Case 3:25-cv-14622-MAS-RLS   Document 1   Filed 08/14/25   Page 14 of 16 PageID: 14
THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net



# EXHIBIT 'A' EQUIPMENT DESCRIPTION ADDENDUM

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number B517416-001. By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing regardless of the price and terms (if any) indicated on the invoice(s).

| Payee Name | Invoice # | Equipment Description | Amount |
|---|---|---|---|
| ULTIMATE COMFORT INC | I-10276-1 | HP303/AHU303 , HP304/AHU304 , HP306/AHU306, HP307/AHU307, Smoke Detectors – 22 , Outside air intake, Return air plenum with filter rack, Second Floor Supply ductwork, Supply and Return Grilles, DH4, DH5 (Elevator rooms on the roof),  Wind w uni Wall-mounted package units | $240,519.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**CUSTOMER**: Rockingham Properties  L

By: *Daniel Lovenheim*

Name: Dan el Lovenh im

Title: Manager
Date: 3/2 /2025

# **EXHIBIT B**

Docusign Envelope ID: 683DAC5A-5F0E-44FC-9CE0-B3426BC71D15
Case 3:25-cv-14622-MAS-RLS    Document 1    Filed 08/14/25    Page 16 of 16 PageID: 16
THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

NOTICE OF ASSIGNMENT

Rockingham Properties LLC
2152 North US Highway 1
Rockingham, North Carolina, 28379

| 1. | **Daniel Lovenheim** |

RE: Equipment Finance Agreement dated as of 3/26/2025 between FP Leasing Group Inc. d/b/a Financial Partners Group ("**Lender**") and Rockingham Properties LLC ("**Customer**") (as may have been or hereafter amended, and with all schedules and addenda thereto, collectively, the "*Agreement*"), together with all other documents executed in connection therewith including but not limited to the Guaranty dated 3/26/2025 executed by Daniel Lovenheim in favor of Lender ("**Guaranty**") (together with the Agreement, collectively, the "**Loan Documents**") together with the equipment described in the Loan Documents (collectively, the "**Collateral**")

Dear Daniel Lovenheim

Lender hereby provides Customer and Guarantor notice that as of 3/26/2025 ("**Effective Date**"), Lender has assigned to **Ameris Bank** ("**Assignee**"), whose offices are at **575 Anton Boulevard, Suite 1080, Costa Mesa, California 92626 United States** all rights, title and interest of Lender in and to the Loan Documents and in the Collateral, including, without limitation all payments arising under the Loan Documents. From and after the date of this Notice of Assignment, all payments now or hereafter becoming due pursuant to the Agreement or with respect to the Collateral shall be paid directly to Assignee at the address of Assignee, specified in the foregoing paragraph or at such address as Assignee shall direct in Assignee's invoices.

As of the Effective Date, the following amounts are due and owing to Assignee, plus all other sums due under the Loan Documents

        62 Monthly Payments of 62 @ $5,473.56, plus applicable tax

        First Periodic Payment due following the Effective Date is 4/30/2025.

Additionally, pursuant to the Agreement, please furnish to Assignee insurance certificates adding Assignee as Lender Loss Payee and as Additional Insured under each casualty and liability insurance policy maintained by Customer.

LENDER:

FP Leasing Group Inc. d/b/a Financial Partners Group

By: *Stephanie Gamm* (DocuSigned by: 16BCBAF1D3494A0...)
Name: Stephanie Gamm
Title: Funding Manager

3249893v1